Joe T. ROBERTS and wife, Nellie
C. Roberts

v.

FUQUAY–VARINA TOBACCO BOARD
OF TRADE, INC., et al.

Civ. No. 1442.

United States District Court
E. D. North Carolina,
Raleigh Division.

Aug. 29, 1963.

Lake, Boyce & Lake, Raleigh, N. C.,
Wilson & Bain, Lillington, N. C., for
plaintiffs.

Battle, Winslow, Merrell, Scott & Wiley, Rocky Mount, N. C., Thomas A.
Banks, Raleigh, N. C., Gholson & Gholson, Henderson, N. C., for defendants.

LARKINS, District Judge.

The above-entitled action is brought
against the defendants based upon an alleged illegal restraint of trade imposed
by the amended By-Laws of the defendant, Fuquay-Varina Tobacco Board of
Trade, Incorporated. The plaintiffs
claim that these amended By-Laws are
unreasonable and contrary to the provisions of the Sherman Anti-Trust Act, 15
U.S.C. § 1 et seq., and the Clayton Act,
15 U.S.C. § 12 et seq. The suit was commenced in the Superior Court of North
Carolina, Wake County, and on motion of
the defendants was removed to the United States District Court for the Eastern
District of North Carolina, Raleigh Division. The plaintiffs prayed that the defendants be permanently enjoined from
attempting to enforce the amended portion of the By-Laws heretofore mentioned, and that they be further permanently directed to allot selling time for
the year 1963 in accordance with the By-Laws as they existed for the year 1962.
An Order to Show Cause was issued by
the Honorable Algernon L. Butler, Chief
Judge of the United States District Court
for the Eastern District of North Carolina, on July 26, 1963, returnable before
this Court at the Carteret County Courthouse at Beaufort, North Carolina, on
the 7th day of August, 1963 at 10:30
o'clock A.M. At this hearing the plaintiffs and defendants, through counsel, offered affidavits, including the Complaint
and Answer; and, the oral testimony of
Fred S. Royster was presented by the
defendants. The parties to this action
do not question the jurisdiction of this
Court.

FINDINGS OF FACT

Upon consideration of the affidavits,
briefs, and pleadings, offered as evidence,
and the testimony presented at the hearing, the Court, for the purpose of this
hearing, finds the following facts:

1. Fuquay-Varina tobacco market
   in 1962 was operated by four
   warehouse firms, to-wit, the Gold

Leaf Firm, the New Deal Firm, the Big Top Firm, and the Carolina Warehouse. The first three are defendants in this case, but the Carolina Warehouse is not. All four firms, however, are members of the Fuquay-Varina Tobacco Board of Trade.

2. The selling time allotted by the Bright Belt Warehouse Association to the Fuquay-Varina tobacco market is the maximum of 4,400 baskets a day. Since there is no limitation on the number of warehousemen who may participate in a market, it is necessary that the 4,400 baskets a day be fairly and equitably allotted to the several warehousemen, in the absence of a unanimous agreement.

3. In the Fuquay-Varina tobacco market, the allowable selling time is allotted by a trade association, the Fuquay-Varina Tobacco Board of Trade, Inc., to which all of the warehousemen belong. This Board of Trade exercises its power of allotting selling time under the provisions of N.C.Gen.Stat. § 106–465, which authorizes tobacco Boards of Trade to make reasonable rules and regulations for the handling of the sale of tobacco. The Fuquay-Varina Tobacco Board of Trade was incorporated under this Act.

4. In 1962, the Fuquay-Varina tobacco market operated under what is known as the "Floor Space" system by which the Board of Trade allotted to each of the four member warehouse firms, a proportion of the total of 4,400 baskets a day which the warehouse space owned or controlled by each firm bore to the total warehouse space on the market adjusted by mutual agreement in 1962.

5. In the fall of 1962, the plaintiffs notified various other members of the Fuquay-Varina Tobacco Board of Trade of their plans to construct a tobacco sales warehouse containing approximately 400,000 square feet of floor space. The plaintiffs submitted a written request for the allocation of selling time for the year 1963. This request was addressed to the Secretary of the Fuquay-Varina Tobacco Board of Trade. Upon the filing of the plaintiffs' application, when approved, their warehouse would be entitled to almost one-third of the total selling time under the floor space system which was in effect at that time. Such an allocation would cut down the allotted selling time which had been made to the older and established warehouses operating within the Fuquay-Varina tobacco market. Pursuant to plaintiffs' notice of construction, the other firms gave notice to the Board of Trade of their intentions to construct additional floor space; and, along with each notice was a request for additional selling time.

6. The annual meeting of the Fuquay-Varina Tobacco Board of Trade, Inc. was held on March 6, 1963. This meeting was recessed until March 20, 1963, at which time a motion was passed repealing the old regulation providing for allotment of selling time on the floor space system. A motion was then passed to adopt a set of new regulations which provided for the allotment of selling time on the modified performance system in accordance with the decision rendered in Civil Action No. 518 in the United States District Court for the Western District of Virginia, in the case entitled, The Danville Tobacco Association v. Bryant-Buckner Associates, Inc., et al. The result of the adoption

of these new regulations was to reduce the plaintiffs' total number of piles to sell per day from 890 under the floor space system to 512 per day under the modified performance system.

7. Following the adoption of these new regulations, all of the applicants abandoned their plans for more construction, except plaintiffs who reduced the size of their building from 400,000 square feet to 254,448 square feet.

## CONCLUSIONS OF LAW

Rule 65. Federal Rules of Civil Procedure. Injunctions.

"The function of the equitable remedy of injunction is preventive, prohibitory, protective or restorative, as the law and circumstances of the case warrant." 7 Moore's, Federal Practice, p. 1625, P. 65.04.

"The general purpose of a preliminary injunction is to preserve the status quo pending final determination of the action after a full hearing." Doeskin Products v. United Paper Co. (CA 7th, 1952) 195 F.2d 356, 358.

" * * * at times a mandatory writ will be necessary and proper. In this connection, Taft, then Circuit Judge, stated: 'The office of a preliminary injunction is to preserve the status quo until, upon final hearing, the court may grant full relief. Generally this can be accomplished by an injunction prohibitory in form, but it sometimes happens that the status quo is a condition not of rest, but of action, and the condition of rest is exactly what will inflict the irreparable injury upon complainant, which he appeals to a court of equity to protect him from. In such a case courts of equity issue mandatory writs before the case is heard on its merits.'" 7 Moore's, Federal Practice, p. 1626.

In Carroll et al. v. The Warrenton Tobacco Board of Trade, Incorporated, 259 N.C. 692 (1963) at page 696, 131 S.E.2d 483, at page 486, the Court stated:

"Although plaintiffs' prayer for relief, in part, is phrased in terms of restraining defendant, the relief plaintiffs seek pending the final determination of the action as well as upon its ultimate determination is a mandatory injunction requiring defendant to allocate selling time to Centre Warehouse No. 2 in accordance with plaintiffs' contention.

\* \* \* \* \* \*

"If and when plaintiffs' legal rights are established in accordance with their contention by final judgment a mandatory injunction would be an appropriate remedy in the nature of execution to compel compliance with such judgment. McIntosh, op. cit., § 851.

"In the light of these legal principles, plaintiffs are not entitled, pending the final determination of their legal rights, to a writ requiring defendant to allocate to Centre Warehouse No. 2 the selling time for which plaintiffs contend."

In this instant case the plaintiffs seek a mandatory writ to have the defendants permanently enjoined from attempting to enforce the amended portion of the By-Laws and to have them permanently directed to allot selling time for the 1963 season according to the 1962 By-Laws or in some other manner. This the Court is not prepared to do on a motion for permanent injunction. (Permanent injunction defined, 6 Moore's, Federal Practice, p. 45).

The Fuquay-Varina Tobacco Board of Trade, Inc., is duly authorized to amend, alter, and repeal its By-Laws. The Board exercised its lawful authority when it amended its By-Laws in March 1963.

Considering all of the evidence, including affidavits, oral testimony, the briefs and the pleadings, for purposes of this motion, the Court finds that the new regulations as adopted by the Board of Trade do not constitute unlawful restraint of trade. Gray v. Central Ware-

house Company, 181 N.C. 166, 106 S.E. 657 (1929); Kinston Tobacco Board of Trade v. Liggett & Myers Tobacco Company, 235 N.C. 737, 71 S.E.2d 21 (1955); American Federation of Tobacco Growers v. Neal, 183 F.2d 869 (CA 4, 1950); Robertson et al. v. Henderson Tobacco Board of Trade et al., United States District Court for the Eastern District of North Carolina, Raleigh Division, No. 342, Decision by District Judge, Don Gilliam, May 14, 1949; Asheville Tobacco Board of Trade v. Federal Trade Commission, 263 F.2d 502 (CA 4, 1959); Asheville Tobacco Board of Trade v. Federal Trade Commission, 294 F.2d 619 (CA 4, 1961); Danville Tobacco Association v. Bryant-Buckner Associates, Inc. et al., Civil Action No. 518, United States District Court for the Western District of Virginia. True, these regulations do place a restraint upon competition and trade for a new entrant into the market at Fuquay-Varina, but not to such an extent as would be considered unreasonable and unlawful. The plaintiffs have been allotted selling time for the 1963 season.

The evidence is insufficient to show that the defendants have entered into a conspiracy or into an illegal combination in order to effect a restraint of trade and commerce.

The plaintiffs are not entitled to a mandatory writ to have the defendants permanently directed to allot selling time for which plaintiffs contend.

For these stated reasons, the plaintiffs' motion for a permanent injunction and for a permanent direction to allot selling time should not be allowed. The Show Cause Order is vacated.

The plaintiffs' motion for judgment on the pleadings filed August 19, 1963 is taken under advisement pending receipt of respondents' reply and briefs to be filed by the parties within the time allowed by General Rule 4(F), United States District Court, Eastern District of North Carolina.

Therefore, is it ordered, that the motion of the plaintiffs for a permanent injunction, and for a permanent direction to allot selling time in this action be, and the same is hereby denied.

The Clerk is directed to serve a copy of this Opinion and Order upon all counsel of record.