John J. SPROW, Plaintiff-Appellee, Cross-Appellant,

v.

HARTFORD INSURANCE COMPANY et al., Defendants,

Helen Gollott et al., Defendants-Appellants, Cross-Appellees.

Anna Mae Magash KELLER, Plaintiff-Appellee, Cross-Appellant,

v.

HARTFORD INSURANCE COMPANY et al., Defendants,

Helen Gollott et al., Defendants-Appellants, Cross-Appellees.

Nos. 77–1073, 77–1074.

United States Court of Appeals, Fifth Circuit.

May 3, 1979.

Rehearings Denied June 18, 1979.

6.  *See* note 3, *supra.*

John D. Lambert, Jr., New Orleans, La., for Helen Gollott.

A. J. McNamara, Metairie, La., for E. M. Gollott and F. Morgan.

Jerald N. Andry, Gilbert V. Andry, III, New Orleans, La., for John J. Sprow.

Gibson Tucker, Jr., New Orleans, La., for Anna Mae Magash Keller.

P. A. Bienvenu, New Orleans, La., for Empire Fire & Marine Ins. Co.

Paul V. Cassisa, Metairie, La., for Hartford Ins. and L. D. Gollott.

A. Remy Fransen, Jr., New Orleans, La., for St. Paul Co. and Frazier, Breseman, Klepac.

Before GEWIN, GEE and RUBIN, Circuit Judges.

GEWIN, Circuit Judge:

This is the companion case of Nos. 76–1093 and 76–1094, *Sprow v. Hartford Insurance Co., et al.* The matter before us arose from consolidated automobile accident suits brought by John Sprow and Anna Mae Keller against defendants Hartford Insurance Company, L.D. and Helen Pickich Gollott d/b/a L.D. Gollott Seafood Company, E.M. Gollott and Franklin Morgan. After the filing of the complaint, Arnold Breseman, Frazier Insurance Agency and St. Paul Companies were joined as original, third-party and cross defendants. The district court subsequently dismissed Breseman, Frazier, and St. Paul from the cause for lack of personal jurisdiction and we have reversed that judgment in 76–1093.

The action was tried without a jury on the merits and the court rendered judgment in favor of Sprow and Keller against Helen Gollott, E.M. Gollott and Franklin Morgan. L.D. Gollott and Hartford were found not liable. All of the parties, except Hartford, appeal from the judgment raising various contentions. Finding the district judge's factual findings and conclusions of law to be correct, we affirm.

On June 15, 1972, an automobile driven by Sprow and in which Keller was a passenger collided with a truck owned by E.M. Gollott and driven by Franklin Morgan. Sprow and Keller were seriously injured. The truck was being driven to New Orleans to obtain oysters for the mutual benefit of

L.D. Gollott and his brother, E.M. Gollott, each of whom operated a seafood business in Biloxi, Mississippi. The seafood company operated by L.D. Gollott was owned by his wife Helen Pickich Gollott who also participated in its management.

In April 1972, the Gollott brothers entered into a verbal agreement to send the truck to Louisiana on a regular basis for the purpose of delivering oysters to their businesses. They agreed that by sharing the expenses of such deliveries, they would minimize their individual costs. To this end, E.M. Gollott promised to purchase the truck and L.D. Gollott agreed to procure insurance for the vehicle by adding the truck to his existing fleet policy with Hartford Insurance Company. All operating expenses for the truck, including the driver's salary, were to be apportioned between the brothers in amounts proportionate to the quantity of oysters purchased by each.

Shortly after execution of the agreement, E.M. Gollott purchased a 1966 Chevrolet truck for the oyster deliveries and hired Franklin Morgan to drive it. Between this time and the date of the accident, Morgan drove to Louisiana several times per week to purchase and deliver oysters to the companies. When the truck was not in use, it was parked in the vicinity of the two businesses and each brother had the right to utilize the vehicle and Morgan's services for his own individual business. On several occasions, L.D. Gollott used the truck and Morgan for his own benefit.

To carry out his part of the bargain, L.D. Gollott telephoned Arnold Breseman of the Frazier Insurance Agency on April 11, 1972 in order to add the 1966 Chevrolet truck to his existing Hartford policy. Frazier is Hartford's representative in Pascagoula, Mississippi and Breseman had been L.D.'s agent for a number of years. L.D.'s existing policy, which expired April 25, 1972, included as an insured vehicle a 1968 refrigerated Chevrolet truck. Upon calling Breseman, L.D. instructed the agent to in-

sure the 1966 truck. What specific information L.D. gave Breseman about the 1966 truck was disputed at trial. L.D. and E.M. claimed L.D. and his secretary Jackie Pickich informed Breseman of E.M.'s ownership of the truck, the reason for the truck's purchase and the financial arrangement between E.M. and L.D. Breseman denied receiving such information.

As a result of the phone call, Breseman added the 1966 truck to the policy. On April 27, 1972 Breseman met L.D. Gollott to discuss what vehicles were to be covered by the new policy which went into effect on April 25, 1972. At this meeting L.D. instructed Breseman to remove "the Chevrolet" from the policy because it was out of service. Both men understood L.D. to mean the 1968 refrigerated truck. However, by mistake, the 1966 truck was eliminated from the insurance policy.

In their suits following the accident, Sprow and Keller joined Hartford as a defendant,[1] claiming its insurance policy with L.D. Gollott provided coverage on the 1966 truck. L.D. and Helen Gollott, E.M. Gollott and Morgan asserted the same grounds in joining Hartford as a cross-defendant and claimed that it was liable as insurer for any negligence of Morgan. In its opinion, the district court determined that the elimination of the 1966 truck occurred through the mutual mistake of L.D. Gollott and Breseman. Accordingly, it reformed the policy to include the vehicle.

However, the court then interpreted the following exclusionary provision in the policy and found the truck to be excluded from coverage:

> This insurance does not apply to bodily injury or property damage arising out of (1) *a non-owned automobile used in the conduct of any partnership or joint venture* of which the insured is a partner or member and *which is not designated in this policy as a named insured,* or (2) if the named insured is a partnership, an

---

1. Hartford was joined pursuant to the Louisiana Direct Action Statute, La.Rev.Stat.Ann. § 22.655 (West 1978), which permits an injured

party to bring an action against the insurer of the alleged tortfeasor.

automobile owned or registered in the name of a partner thereof.

\* \* \* \* \* \*

A non-owned automobile is to be an automobile which is neither an owned automobile nor *a hired automobile.* (emphasis added)

The court reasoned that the 1972–73 policy provided no coverage on the truck because it was a non-owned automobile used in a joint venture which was not designated as a named insured and of which the named insured, L.D. Gollott, was a member. In addition, it found the vehicle was not a "hired automobile", which would remove it from the "non-owned automobile" exclusion, because there was not a separate contract under which the truck was hired to L.D.'s business. Finding the truck excluded, the trial judge exonerated Hartford from any possible liability. The court then determined that Morgan was negligent and that his negligence caused the accident. Accordingly, Morgan and Helen Gollott and E.M. Gollott, as owners of the companies whose joint venture employed Morgan, were found liable to plaintiffs for their damages.[2] The claim as to L.D. Gollott was dismissed because of his lack of ownership in either seafood company.

■ The primary issue raised on this appeal is the district judge's interpretation of the Hartford policy. Appellants claim that the court correctly reformed the policy to include the 1966 truck. They assert, however, that the court erred in failing to reform the policy further to provide coverage for the truck, the original intent of L.D. Gollott in ordering Breseman to insure the vehicle. This assertion is founded on two rationales. First, appellants contend that both L.D. and Breseman intended the joint

venture between L.D. and E.M. Gollott[3] to be designated a named insured in the policy.[4] Reformation of the policy to rectify this mutual mistake would have taken the truck out of the "non-owned automobile exclusion" quoted above. Second, appellants assert the vehicle was a "hired automobile", bringing it within the policy's coverage.

The premise of the first contention is that L.D. informed Breseman on April 11, 1972 of E.M.'s ownership of the truck, the nature of the brothers' financial arrangement and the vehicle's role in the joint venture. This court must decide whether there was sufficient evidence of Breseman's knowledge and intent to establish mutual mistake and warrant further reformation of the policy to add the joint venture as a named insured.

■ This issue involves the construction of an insurance policy issued in Mississippi. In deciding whether this interpretation was governed by Mississippi law or Louisiana law, the diversity court was bound by the choice of law principles of the forum state. *Klaxon v. Stentor Manufacturing, Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Louisiana law requires that an insurance policy be construed according to the laws where it was issued and delivered. *E. q., Deane v. Magee,* 261 La. 686, 260 So.2d 669, 673 (La.1972). Therefore, Mississippi law governs.

■ It is a well settled rule of Mississippi jurisprudence that a person may obtain reformation of a contract for mutual mistake, but he must first prove this mutual mistake beyond a reasonable doubt. *Stone v. Stone,* 210 So.2d 672, 674 (Miss.1968); *Continental Oil Co. v. Walker,* 238 Miss. 21, 117 So.2d

---

**2.** The amount of damages awarded John Sprow was $141,293.97 and costs. Anna Mae Keller received a judgment in the amount of $67,709.91 plus costs.

**3.** Appellants do not seriously contend that the court erred in finding the business arrangement to be a joint venture. We thus deem it sufficient to say that the court's conclusion was correct.

**4.** The district court did not expressly decide this issue. It held as a conclusion of law:

The 1972–1973 policy provided no coverage for the 1966 Chevrolet truck because it was excluded from coverage as a non-owned automobile used in the conduct of a joint venture of which the insured was a member and which was not designated in the policy as a named insured.

333, 340 (1960); *American Alliance Ins. Co., N.Y. v. Alford,* 229 Miss. 855, 92 So.2d 191, 193 (1957).

■ We feel that appellants did not prove beyond a reasonable doubt that Breseman intended to insure the joint venture. Thus, the policy may not be reformed to add the joint venture as a named insured. It is, in fact, unclear from the evidence whether Breseman even knew of the joint venture and the planned use of the truck. L.D. Gollott testified that in the April 11, 1972 conversation he told Breseman about the joint venture and the purpose and use of the truck. Breseman denied being informed of this information or of E.M.'s ownership.[5] Jackie Pickich, the other participant in the conversation, testified that she gave Breseman the information on the bill of sale to the truck but did not inform him that the truck was going to be utilized in a joint venture between L.D. and E.M. She could not recall any details of the conversation between L.D. and Breseman.

This evidence does not show conclusively that Breseman intended the terms of the policy to include the joint venture as a named insured. Simply stated, appellants have failed to carry their heavy burden of proof with respect to this contention.

In claiming the 1966 truck was a "hired automobile" under the policy, appellants dispute the court's conclusion that a separate contract of lease or hire between E.M. and L.D. was required. The Hartford policy defined "hired automobile" as follows:

An automobile not owned by the named insured which is used under contract in behalf of, or loaned to the named insured, provided such automobile is not owned by or registered in the name of (a) a partner or executive officer of the named insured, or (b) an employee or agent of the named

insured who has granted an operating allowance of any sort for the use of such automobile.

Appellants assert that L.D. was using the truck under the contract creating the joint venture. Pursuant to the agreement he exchanged consideration in the form of insurance coverage for equal control over the truck. Hence there was no need for an additional contract between L.D. and E.M. giving L.D. exclusive use of the vehicle.

■ Decisions by our courts have established that for a vehicle to constitute a hired automobile, there must be a separate contract by which the vehicle is hired or leased to the named insured for his exclusive use or control. *Russom v. Insur. Co. of North America,* 421 F.2d 985, 993 (6th Cir. 1970); *Fertick v. Continental Casualty Co.,* 351 F.2d 108, 110 (6th Cir. 1965); *American Casualty Co. v. Denmark Foods,* 224 F.2d 461, 463 (4th Cir. 1955); *Kelly v. Phoenix Assurance Co. of N.Y.,* 225 F.Supp. 562, 565 (D.Md.1964); *American Auto Ins. Co. v. Indemnity Ins. Co.,* 108 F.Supp. 221, 223 (E.D. Penn.1952). *See also Johnson v. Royal Indemnity Co.,* 206 F.2d 561 (5th Cir. 1953).

■ We cannot agree with appellants, however, that their agreement satisfied this separate contract requirement. That agreement merely created a joint venture and specified that the brothers were to share the expenses of securing a truck for the operation. It required E.M. to purchase the 1966 truck for the joint venture from which L.D. and E.M. were to derive mutual benefits. L.D. was to provide insurance coverage for the vehicle. This common purpose was the sole reason for E.M.'s purchase of the vehicle. There was no agreement between the two brothers whereby L.D. leased, hired or borrowed the truck from E.M., the title owner, for his own personal and exclusive use.[6] Because of the

---

**5.** The evidence revealed that Breseman and E.M. Gollott had had a past dispute over a Hartford policy then owned by E.M. Because of their disagreement, the two men no longer did business with each other. Breseman cited this history of previous dealings as evidence of his ignorance of the details concerning the truck. He claimed that if he had known E.M.

held title to the truck and was involved in the joint venture, he never would have insured the vehicle. He stated that he understood the truck to be owned by L.D. Gollott.

**6.** Hartford also required a separate contract of hire by the named insured for a vehicle to be

absence of this agreement, we are convinced that this vehicle was not a hired automobile within the definition of the policy and that the court properly found it to be excluded from coverage as a "non-owned automobile."

The proper means by which to insure the vehicle would have been to amend the policy to add the joint venture as a named insured. Appellants have failed to proffer sufficient proof that they attempted to make that modification. We therefore may not compel the district court to reform the policy to provide insurance coverage on the 1966 truck.

We have scrutinized the other contentions raised by appellants and find them devoid of merit. Accordingly, the judgment of the district court is AFFIRMED.

insured as a hired automobile. The insurance company used this agreement to compute the premiums from the "cost of hire." The premium rates for hired automobiles are generally cheaper than those paid on owned automobiles. The lower rates stem from the insurance company's assumption that the owner is providing primary insurance coverage on the vehicle.

There is no evidence that Breseman requested or obtained L.D.'s "cost of hire" and calculated the premiums on this basis. Rather it appears that the agent viewed the vehicle as an "owned" vehicle.